**UNITED STATES of America,**
**Plaintiff, Appellant,**

v.

**6.93 ACRES OF LAND, etc., et al.,**
**Defendants, Appellees.**

**UNITED STATES of America,**
**Plaintiff, Appellant,**

v.

**67.73 ACRES OF LAND, etc., et al.,**
**Defendants, Appellees.**

**Nos. 88–1184, 88–1201.**

United States Court of Appeals,
First Circuit.

Heard June 7, 1988.

Decided July 25, 1988.

As Amended Aug. 1, 1988.

Angus E. Crane, Dept. of Justice, Land & Natural Resources Div., with whom Roger J. Marzulla, Asst. Atty. Gen., Washington, D.C., Frank L. McNamara, Jr., U.S. Atty., Nicholas C. Theodorou, Asst. U.S. Atty., Boston, Mass., and Robert L. Klarquist, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., were on brief for plaintiff, appellant.

James M. Hughes with whom Devin & Drohan, P.C., Hingham, Mass., was on consol. brief for defendants, appellees.

Before COFFIN and BREYER,
Circuit Judges, and ACOSTA,* District Judge.

BREYER, Circuit Judge.

On January 24 and May 29, 1984, the district court decided two "eminent domain" proceedings brought by the United States to determine the value of two parcels of land, one in Truro, Massachusetts, owned by Nancy Watson, and one in Orleans, Massachusetts, owned by John and Gail Gochenaur. Nancy Watson said her land was worth $450,000; the government said $286,000; and the court decided it was worth $327,400. The Gochenaurs said their land was worth $59,000; the government said $11,250; and the court decided it was worth $17,431.12.

---

* Of the District of Puerto Rico, sitting by designation.

After the court's decision, each of the landowners asked for attorney's fees under the Equal Access to Justice Act ("EAJA"). 5 U.S.C. § 504 (1982 & Supp. IV 1986), 28 U.S.C. § 2412 (1982 & Supp. IV 1986). That Act awards attorney's fees to a private "prevailing party" in a civil case, unless the court finds the government's position was "substantially justified" (or that other circumstances make an award unjust). § 2412(d)(1)(A). In August, 1985, 14 and 17 months after the parties had requested fees, Congress passed an amendment to the EAJA clarifying the definition of "prevailing party." The amendment said that "in the case of eminent domain proceedings," a private party is a "prevailing party" only if he or she "obtains a final judgment ... at least as close to [his or her] ... highest valuation of the property" as to the "highest valuation of the property" the government suggested. § 2412(d)(2)(H). Since the court's final valuation was far closer to that suggested by the government than that suggested by the private parties, this amendment, if applicable, means the private parties here did not "prevail," and counsel cannot collect fees (whether or not the government's initial position was "substantially justified").

Despite the new amendment, the district court (without explanation) awarded the parties the fees they sought, on November 9, 1987. The government appeals, arguing 1) that the new amendment applies; the parties therefore did not "prevail;" and 2) that the government's position was "substantially justified." We agree with the government that the new amendment applies and (as the landowners concede) it bars the fee claims. We therefore need not reach any other issue.

We conclude that the amendment with the specific "eminent domain" definition applies where, as here, counsels' previously filed fee applications were pending on the day the amendment became law, for the following reasons. First, the language of the new law itself says that it applies. The 1985 Act says that its amendments "shall apply to cases pending on or commenced on or after the date of the enactment of the Act [Aug. 5, 1985]." Pub.L. No. 99–80,

§ 7(a), 99 Stat. 183, 186 (1985), *reprinted in* note to 5 U.S.C. § 504 (Supp. IV 1986). The district court had decided the *merits* of the two cases and the landowners had filed fee applications more than a year before August 5, 1985 (the two applications were filed in February and June 1984), but the fee applications were still "pending" on August 5, 1985, and in this respect, so was the case. *Center for Science in the Public Interest v. Regan,* 802 F.2d 518, 521 (D.C. Cir.1986) ("The statute before us is exclusively concerned with attorneys' fees and fee petitions; as a result, the plain meaning of 'cases pending' in specifying the effective date of the fee statute 'presumably would be commonly understood to include pending fee applications.'" (quoting *Trahan v. Regan,* 625 F.Supp. 1163, 1164 (D.D.C.1985))); *see also Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1467 & n. 62 (Fed.Cir.1986) ("The amendments ... provide for their applicability to *pending* cases without distinction, and [so] the amendments apply to ... [a] petition for fees."); *Russell v. National Mediation Board,* 775 F.2d 1284, 1286 (5th Cir.1985) ("The phrase 'cases pending' makes no distinction between the fee application stage of a case and consideration of the merits.").

Second, the legislative history of the EAJA amendments indicates that the effective-date language means what it literally says. The 1985 EAJA amendments extended the life of the EAJA (which had expired a few months earlier); they made some substantive changes in the prior act; and they also made "changes which merely clarify existing law." H.R.Rep. No. 120, 99th Cong., 1st Sess. 1, 11 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 139. The House of Representatives report on the bill that became law explicitly says that the eminent domain "prevailing party" definition was one of the type of changes last-mentioned, it was "adopted ... to *clarify* the status of condemnation actions under the Act." H.R.Rep. No. 120 at 18, U.S.Code Cong. & Admin.News at 147 (by "mak[ing] clear that condemnation cases are covered by the Act ... [and by] provid[ing] a standard for determining who

the prevailing party would be in such actions"). The House report also *explicitly* says that the "changes which are made by [the bill] which merely *clarify* existing law are retroactive and apply" to pending "matters." H.R.Rep. No. 120 at 11, U.S.Code Cong. & Admin.News at 139 (emphasis added) (contrasting clarifying changes with those that "expand or otherwise change existing law" and take effect on the date of enactment of the new bill). The House report added that the 1985 amendments in part reflected Congress's view that "courts are misconstruing the Act." H.R.Rep. No. 120 at 9, U.S.Code Cong. & Admin.News at 137. And, it therefore concluded "[t]o the extent that amendments made by this Act merely clarify the original Congressional intent in EAJA these amendments will have the effect of informing judicial construction of pre-1985 provisions of EAJA with respect to pending cases." H.R.Rep. No. 120 at 21, U.S.Code Cong. & Admin. News at 149.

The only arguably contrary legislative history consists of the following remark on the House floor by Congressman Kastenmeier:

> I would like to clarify the effective date provisions of [the new bill] and the relationship of these provisions with the original act. Cases which were pending on October 1, 1984, including fee application proceedings would be governed by the original act, provided that the time to file the fee application expired before the date of enactment of this bill. This bill would apply to any case pending on October 1, 1984, and finally disposed of before the date of enactment of this bill, if the time for filing an application for fees and other expenses had not expired as of such date of enactment.

131 Cong.Rec. H4762 (daily ed. June 24, 1985).

If taken literally, these remarks include the present case in the category "governed by the original act" because the "time to file the fee application expired before the date of enactment" of the amendments. But, we cannot take Congressman Kastenmeier's remarks literally, or at least, we cannot allow them to be controlling here.

They seem more likely aimed at a different, complex provision in the statute designed to bridge the several months gap between expiration of the old EAJA and enactment of the new EAJA. *See* Pub.L. No. 99–80, § 7(b), 99 Stat. 183, 186 (1985) (savings clause for cases filed and decided between October 1, 1984 and August 5, 1985), *reprinted in* note to 5 U.S.C. § 504 (Supp. IV 1986). And, nothing in the legislative history suggests any reason why Congressman Kastenmeier would not have wanted the clarifying amendments, many of which were liberalizing, to apply to undecided but then pending fee applications. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 118, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980) ("the contemporaneous remarks of a single legislator [even one] who sponsors a bill are not controlling in analyzing legislative history" (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979))); *see also Center for Science in the Public Interest*, 802 F.2d at 522–24 (same Kastenmeier remarks not controlling); *Russell*, 775 F.2d at 1286–87 (same).

 Third, a court normally applies "the law in effect at the time it renders its decisions." *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (granting attorney's fees for services performed before enactment of provision allowing attorney's fees where appeal of fee award pending on enactment date). The Supreme Court made an exception when applying that law "would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* Here, the statute and legislative history are consistent with the rule, not the exception. In general, applying the EAJA's clarifying changes to cases under consideration in 1985 would not work "manifest injustice." In this particular case, appellants argue, the delay in deciding their applications unfairly hurt them. But we cannot pick and choose freely among pending cases of similar types with respect to the application of a particular new law, and in any event, we cannot find "manifest injustice" here. First, it does not seem "unjust" to us to apply at

last an interpretation that the Congress meant should apply from the first. Nor did counsel, while urging the district court to act quickly, call to its attention the likely consequences of the new amendment. And, in any event, prior law did not clearly favor the applicants: before 1985, the courts were divided as to whether and how the EAJA applied to landowners in eminent domain proceedings. *See* H.R.Rep. No. 120 at 18, U.S.Code Cong. & Admin.News at 147; *United States v. 329.73 Acres of Land,* 704 F.2d 800, 801–08 (5th Cir.1983) (discussing whether EAJA applied in eminent domain proceedings); *Kreimes v. Department of the Treasury,* 764 F.2d 1186, 1189–90 (6th Cir.1985) (discussing different criteria used by circuits to award fees under EAJA in eminent domain proceedings).

Fourth, numerous cases reach the same conclusion we reach here. *See, e.g., Ewing v. Rodgers,* 826 F.2d 967, 968 n. 1 (10th Cir.1987); *Gavette,* 808 F.2d at 1467 & n. 62; *Center for Science in the Public Interest,* 802 F.2d at 521–24; *United States v. 1,378.65 Acres of Land,* 794 F.2d 1313, 1316 (8th Cir.1986); *McQuiston v. Marsh,* 790 F.2d 798, 799–800 (9th Cir.1986); *United States v. Kemper Money Market Fund, Inc.,* 781 F.2d 1268, 1270 n. 1 (7th Cir.1986); *Trust Co. of Columbus v. United States,* 776 F.2d 270, 271 n. 1 (11th Cir.1985); *Russell,* 775 F.2d at 1285–88; *see also United States v. Yoffe,* 775 F.2d 447, 448–49 (1st Cir.1985) (court applied new EAJA to pending fee application without discussion). We decline to follow the only circuit court that has decided the matter differently, *Blackmon v. United States,* 807 F.2d 70 (6th Cir.1986), for the reasons given above. The authority cited by the parties, *American Pacific Concrete Pipe Co. v. National Labor Relations Board,* 788 F.2d 586 (9th Cir.1986), does not persuade us otherwise. That case concerned application of substantive changes, not clarifying changes, in the 1985 Act.

For these reasons, the decision of the district court is

*Reversed.*