Enrique **DIAZ**, Plaintiff–Appellant,

v.

Dennis **SHALLBETTER,**
Defendant–Appellee.

No. 92–1344.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1992.

Decided Jan. 28, 1993.

Kenneth N. Flaxman (argued), Chicago, IL, for plaintiff-appellant.

Timothy J. Frenzer, Joseph Polick, Jean Dobrer (argued), Kelly R. Welsh, Benna R. Solomon, Office of the Corporation Counsel, Chicago, IL, for defendant-appellee.

Before COFFEY and EASTERBROOK, Circuit Judges, and LAY, Senior Circuit Judge.*

EASTERBROOK, Circuit Judge.

Two years to the day after being shot by a police officer in Chicago, Enrique Diaz filed suit against John Shullbetter. An attempt to serve process was unsuccessful; there is no such person (at least not in Chicago). Diaz amended his complaint to name Dennis Shallbetter, who claimed shel-

---

* Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation.

ter from the statute of limitations. The version of Fed.R.Civ.P. 15(c) governing in February 1991, when Diaz filed his complaint, provided that an amendment changing the defendant relates back to the date of initial filing only if the proper defendant had actual notice of the litigation within the period of limitations. See *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Because Diaz waited until the last day to file his complaint, Shallbetter did not receive timely notice, and amendment was forbidden. Out went the complaint, and the suit. 1991 U.S.Dist. LEXIS 11078, 1992 U.S.Dist. LEXIS 296, 1992 U.S.Dist. LEXIS 512.

Until its amendment effective December 1, 1991, Rule 15(c) created an anomaly. A plaintiff who filed a timely complaint has 120 days to serve the defendant with process. See Fed.R.Civ.P. 4(j); *West v. Conrail*, 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). So a person properly named in the complaint might not know until four months after the running of the period of limitations that he was a defendant. But if the plaintiff mistook the defendant's name, correction after the period of limitations would not relate back, and the suit would be untimely, even though the plaintiff served the proper person before the 120 days were up. A defendant served 10 days after the period of limitations would prevail if the original complaint contained a misnomer, while a defendant in the dark for 120 days could not plead the statute of limitations if the complaint identified him. As amended, Rule 15(c) provides that if the error is corrected and notice given to the right party within the time provided by Rule 4(j), the change relates back to the original complaint. Dennis Shallbetter received the amended complaint and summons on April 1, 1991, only 34 days after Diaz filed his complaint against "John Shullbetter." Diaz contends that the current version of Rule 15(c) should be applied, resuscitating his suit.

Two courts of appeals have held that the new Rule 15(c) revives claims that were time-barred at their inception under the old version of that rule. *Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543, 546 (5th Cir.1992); *Hill v. United States Postal Service*, 961 F.2d 153, 155–56 (11th Cir. 1992). See also *Bayer v. United States Department of the Treasury*, 956 F.2d 330, 334–35 (D.C.Cir.1992) (dictum). One court of appeals has declined to apply the amendment retroactively, without excluding the possibility of retroactive application in an especially attractive case. *Freund v. Fleetwood Enterprises, Inc.*, 956 F.2d 354, 363 (1st Cir.1992); *Afanador v. United States Postal Service*, 976 F.2d 724 (1st Cir.1992). We have applied the former version of Rule 15(c) to a case decided after its amendment, but without discussing the retroactivity question. *Farrell v. McDonough*, 966 F.2d 279, 282–83 (7th Cir.1992).

 *Skoczylas* and *Hill* invoked the principle that appellate courts apply the law in force at the time of decision. This has a long lineage, traced in *Bradley v. School Board of Richmond*, 416 U.S. 696, 711–16, 94 S.Ct. 2006, 2015–19, 40 L.Ed.2d 476 (1974). There is an even more venerable principle that changes in statutes do not apply to pending cases unless the legislature so commands, explicitly. Several opinions in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), explore these cases. Justice Scalia pronounced the two lines of precedent, which rarely discuss each other, "in irreconcilable contradiction." *Id.* at 841, 110 S.Ct. at 1578 (concurring opinion). This court has agreed with Justice Scalia's conclusion and opted for the presumption against retroactivity. *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 227–28 (7th Cir.1992). See also, e.g., *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir.1992). Presumptions may be overcome, but doing so is especially tough when the altered rule specifies the time within which some act must occur. *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1527 (7th Cir.1990). Laws enlarging the statute of limitations traditionally are applied prospectively; sometimes courts even hint that legislatures lack the power to revive claims that have become barred by lapse of time.

*Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021 (collecting cases).

The federal rules are riddled with time limits. *United States v. Kimberlin,* 776 F.2d 1344 (7th Cir.1985), declined to apply retroactively an enlargement in one of these limits. Although *Kimberlin* dealt with a change in Fed.R.Crim.P. 35 rather than Fed.R.Civ.P. 15, it employed a rule of construction applicable to any time limit in the federal rules: retroactive change of a time limit is sufficiently disfavored and unusual that the drafter needs to "say so pretty clearly before a court will conclude that the [rule] produces this effect." 776 F.2d at 1347.

■ When transmitting to Congress the 1991 round of amendments to the civil rules, the Supreme Court specified that the revised rules "take effect on December 1, 1991, and shall govern all proceedings in civil actions thereafter commenced and, insofar as just and practicable, all proceedings in civil actions then pending." 134 F.R.D. 525 (1991). *Skoczylas* and *Hill* understood this language as authorization for retroactive application. We do not read it so. It tracks 28 U.S.C. § 2074(a), part of the Rules Enabling Act, which provides that when amending rules the Court

> may fix the extent such rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies.

Amendments may or may not govern "further proceedings" in pending cases. Neither the statute nor the Court's implementing language implies using an amendment to change the *consequences* of actions completed before December 1, 1991. They say only that new acts in cases already on the docket ordinarily should conform to the new rules. Although the Supreme Court's words might be stretched to imply reinstating litigation properly decided under the former rules (the district court dismissed

Diaz's complaint against Shallbetter on August 7, 1991), they do not command retroactive application. No case in this circuit that the parties have cited, and no case that we have been able to find, uses a change in statute or rule to revive an action barred by the statute of limitations at the time of its commencement. Adhering to the clear-statement approach of *Kimberlin,* and the assumption of *Farrell,* we conclude that the amendment to Rule 15(c) does not revive lapsed claims.

■ Although the amendment changing John Shullbetter to Dennis Shallbetter does not relate back under the federal rules, this does not necessarily doom Diaz's suit. We know from 42 U.S.C. § 1988 and *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that, although federal law governs the period of limitations in litigation under 42 U.S.C. § 1983 (the foundation of Diaz's claim), the federal law comes from state law—"including closely related questions of tolling and application". 471 U.S. at 269, 105 S.Ct. at 1943 (footnote omitted). Section 1983 actions in Illinois must be filed within two years of the injury. *Farrell,* 966 F.2d at 280–82; *Kalimara v. Illinois Department of Corrections,* 879 F.2d 276 (7th Cir.1989). Does a timely complaint with a misnomer satisfy the statute of limitations in Illinois when the right defendant learns of the action promptly, but after the period of limitations has run? Posing the question in this way is not at all to say that a state's procedural rules govern litigation in a federal court. When federal law borrows a state period of limitations, the suit is commenced by filing the complaint, and service is effective if achieved within the time allowed by Rule 4. See *West,* 481 U.S. at 39 & n. 4, 107 S.Ct. at 1541 & n. 4, distinguishing *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). If Illinois required plaintiffs to serve their adversaries with process before the end of the statute of limitations, in § 1983 litigation a complaint plus service within 120 days nonetheless would suffice, provided any essential amendment to the complaint related back under Rule 15(c). Rule 15(c) is part of federal law, and its meaning is a

federal question. But when trying to determine whether "relation back" is essential to make the complaint timely, we must refer to the law defining the period of limitations.

*Wilson* said that rules of "tolling and application" come from state law, and figuring out whether a complaint with a spelling error satisfies the state's requirements looks like a question of "application." Treating the change—from *John* Shullbetter to *Dennis* Shallbetter—as correction of a scrivener's error would be problematic if Chicago's police force had both a Shullbetter and a Shallbetter, or if it had a John Shallbetter and a Dennis Shallbetter. It does not. The identity of the person Diaz meant to sue would have been apparent to anyone with a directory of the police force, and to Officer Shallbetter himself. Shallbetter, who concluded that Diaz was trying to steal his automobile, shot Diaz in the course of arresting him. Shallbetter says that he acted in self-defense after Diaz attacked with a knife; Diaz contends that Shallbetter shot him in the back as he fled. Diaz pleaded guilty to burglary. The arrest report and the indictment charging Diaz with that offense lists "Dennis Shullbetter" as the owner of the vehicle. So Diaz was not the first to commit a spelling error, and, although "John" lacks an origin in the documents of the criminal case, no one could have been confused. The blunder is closer to a typographical error than to the naming of a division in lieu of a corporation, as in *Schiavone*, or an agency in lieu of the person in charge of the agency, as in cases such as *Skoczylas* and *Hill.* It is a classic misnomer.

■ Complaints burdened by problems of nomenclature satisfy the statute of limitations in Illinois. "Misnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." Ill.Rev.Stat. ch. 110 ¶ 2–401(b). Illinois requires a complaint within the bound set by the statute of limitations, plus service of process within a reasonable time, Illinois Sup.Ct.R. 103(b), but does not care whether the complaint gets defendant's name right. If the right person receives service promptly, the complaint is timely despite the gaffe. *Ellis v. Borisek*, 220 Ill.App.3d 48, 50–51, .162 Ill.Dec. 716, 718, 580 N.E.2d 899, 901 (3d Dist.1991); *Thompson v. Ware*, 210 Ill.App.3d 16, 568 N.E.2d 500 (4th Dist.1991); *Barbour v. Fred Berglund & Sons, Inc.*, 208 Ill.App.3d 644, 648, 153 Ill.Dec. 551, 553, 567 N.E.2d 509, 511 (1st Dist.1991) (McMorrow, J.) (¶ 2–401(b) applies "where an action is brought and summons is served upon. a party intended to be made a defendant. In a misnomer case, actual notice of the lawsuit is given to the real party in interest, but the complaint and process do not refer to the person by his correct name."). Illinois lacks a parallel to Rule 15(c), tying amendment of the complaint to the period within which the real defendant received notice of the suit. The answer to the Rule 15(c) "relation back" question turns out to be *without significance under state law*.

Perhaps, however, all of this is "procedural" and therefore inconsequential under the approach of *West*. Paragraph 2–401(b) appears among the provisions regulating the conduct of litigation and is distinct from Ill.Rev.Stat. ch. 110 ¶ 13–202, which establishes the two-year period of limitations governing § 1983 actions in Illinois. How parties file and amend their complaints is precisely the sort of issue that the law of the forum regulates. Yet by this standard one would have expected *Walker v. Armco Steel* to come out the other way. The Court held that in litigation under the diversity jurisdiction the complaint must be filed *and served* within the time provided by the state's statute of limitations, even though Fed.R.Civ.P. 4(j) provides the time within which the plaintiff must accomplish service. Like its predecessors *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), *Walker* treated the statute of limitations as a substantive rather than a procedural norm. *Wilson* tells us that, in actions under § 1983, provisions regulating both "tolling and applica-

tion" come from state law. "Tolling" refers to a body of rules for extending time and excusing delay. What could "application" mean except subjects such as whether the complaint must spell the defendant's name correctly? It could, we suppose, refer to questions such as "what statute of limitations applies to an injury of this kind?" and "when does the claim accrue?", but *Wilson* says that these are governed by federal rather than state law: *every constitutional tort actionable under § 1983 is treated as a personal injury, with the claim accruing when the injury is inflicted.* 471 U.S. at 278, 105 S.Ct. at 1948; see also *Owens v. Okure,* 488 U.S. 235, 239–41, 109 S.Ct. 573, 576–77, 102 L.Ed.2d 594 (1989). This leaves only hybrids of substance and procedure in the category "application."

■ Diaz could have filed his complaint in state court. *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); cf. *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). Had he done so, and had everything proceeded exactly as it did, the complaint would have been deemed timely because Dennis Shallbetter received prompt knowledge that he was the intended defendant. Why should the selection of a federal forum cause Diaz to lose? *West,* in conjunction with Rule 4(j), gives a plaintiff extra chances in federal court. Illinois requires service within a "reasonable" time after the statute of limitations expires, while Rule 4(j) gives 120 days. If Illinois were to treat 120 days as unreasonably long, the federal rule still would control. No comparable federal rule requires or authorizes a district court to dismiss, as untimely, a suit that the state supplying the statute of limitations would deem timely in its own courts.

The judgment is vacated, and the case is remanded for disposition on the merits.

LAY, Senior Circuit Judge, concurring.

This case is properly resolved by retroactively applying the amended version of Fed.R.Civ.P. 15(c). Ever since *United*

*States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801), the general rule has been that *appellate* courts apply the law in effect at the time that their decision is rendered. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 836–37, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990); *Thorpe v. Housing Auth. of Durham,* 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969). Of course, there are certain exceptions. Where manifest injustice would result to one of the parties or where there is clear congressional intent to the contrary, courts do not follow the rule. *Kaiser Aluminum,* 494 U.S. at 837, 110 S.Ct. at 1577.

In *United States v. Kimberlin,* 776 F.2d 1344 (7th Cir.1985), this court phrased the latter exception somewhat differently. On the question of whether interim Fed. R.Civ.P. 35(b) should be applied retroactively, the court stated that it would not do so unless the legislature "pretty clearly" indicated that intent. *Id.* at 1347. The *Kimberlin* court rejected retroactive application, because there was no indication, either in the rule's "language or genesis," that retroactive application was intended. *Id.* at 1347–48.

Unlike *Kimberlin,* in the instant matter, the Supreme Court stated in its order that the amended rules "shall take effect on December 1, 1991, and shall govern all proceedings in civil actions thereafter commenced *and, insofar as just and practicable, all proceedings in civil actions then pending.*" 134 F.R.D. 525 (1991) (emphasis added). I would think this clear direction would put the matter to rest.

However, the majority contends that this language "says only that new acts in cases already on the docket should, to the extent just and practicable, conform to the new rules." Thus, the majority would read "pending" to mean only cases in which the district court has not yet made a decision, but which have already been filed with the court. In my opinion, this interpretation is clearly wrong.[1]

1. The majority cites as support for its position the decision in *Farrell v. McDonough,* 966 F.2d

279 (7th Cir.1992). In *Farrell,* the Seventh Circuit applied the former version of Rule 15(c) in

First, it is inconsistent with the plain meaning of "pending." *Black's Law Dictionary* states that "an action or suit is 'pending' from its inception until the rendition of final judgment." *Black's Law Dictionary* 1020 (5th ed. 1979). The Supreme Court has defined "final judgment" to mean "one where 'the availability of appeal' has been exhausted or has lapsed, and the time to petition for certiorari has passed." *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711 n. 14, 94 S.Ct. 2006, 2015 n. 14, 40 L.Ed.2d 476 (1974), citing *Linkletter v. Walker*, 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965). Thus, a common sense reading of the word "pending" in the Supreme Court's order would include cases pending on appeal, not simply awaiting disposition before the district court. The majority contends that by employing the clear-statement approach of *Kimberlin*, it must read the word "pending" as not inclusive of cases pending on appeal. In my view, the language of the Supreme Court order is the paradigm of the *Kimberlin* clear statement, and the majority creates ambiguity where none exists.[2]

Finally, the majority's interpretation is contrary to the other circuit court decisions on this issue. *See Hill v. United States*

*Postal Serv.*, 961 F.2d 153, 155–56 (11th Cir.1992) (holding that amended Rule 15(c) applies retroactively to case pending on appeal); *Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543, 545–46 (5th Cir.1992) (same); *Bayer v. United States Dep't of Treasury*, 956 F.2d 330, 334–35 (D.C.Cir. 1992) (stating in dicta that amended Rule 15(c) applies to cases pending on appeal). Indeed, even the First Circuit, which has refused to apply Rule 15(c) retroactively, has not employed the majority's reasoning, but rather has found that retroactive application on the particular facts would work a "manifest injustice." *See Freund v. Fleetwood Enters., Inc.*, 956 F.2d 354, 362–63 (1st Cir.1992); *Afanador v. United States Postal Serv.*, 976 F.2d 724 (1st Cir.1992).

The majority contends that the Supreme Court's order as to amended rules "says nothing about changing the *consequences* of actions completed before December 1, 1991." I respectfully submit no such statement is needed. As noted above, the plain meaning of "pending" includes cases pending on appeal. Although retroactive application of a rule may change the rights of the parties, it does not require a clear statement that appellate courts, as well as district courts, are to apply the amended law. *See United States v. Schooner Peg-*

a case decided after its amendment, but did not discuss the retroactivity issue. *Id.* at 282–83. The majority now relies on "the assumption of *Farrell*" to hold that retroactive application is improper, as if *Farrell* had actually considered the question. The fact that the court did not discuss the issue implies that the parties did not raise or brief the issue and the court did not consider the issue. Thus, *Farrell* has little, if any, relevance to this case and cannot be said to require the majority's result.

**2.** Also instructive on the meaning of the word "pending" are cases dealing with the retroactive application of the 1985 amendments to the Equal Access to Justice Act. In those amendments, Congress stated that "the amendments made by this Act shall apply to cases pending on or commenced on or after the date of the enactment of this Act." Pub.L. No. 99–80, § 7a, 99 Stat. 183, 186. Subsequently, a number of circuit courts attempted to define whether certain cases were "pending" for purposes of retroactive application. The majority of courts found that cases were pending even if the case had been *fully decided on the merits* and only the post-judgment motions for attorney fees remained. *See, e.g., Western Newspaper Publishing Co., Inc. v. NLRB*, 821 F.2d 459 (7th Cir.1987); *United*

*States v. 6.93 Acres of Land*, 852 F.2d 633 (1st Cir.1988); *Center for Science in the Pub. Interest v. Regan*, 802 F.2d 518 (D.C.Cir.1986). In *United States v. 1002.35 Acres of Land*, 942 F.2d 733 (10th Cir.1991), for example, the merits had been decided and appealed, and the only remaining matter was a petition for attorney fees before the district court. *Id.* at 736. The Tenth Circuit held that the amended version of the EAJA applied because the case was still "pending." *Id.* Indeed, in a case where the merits and the fee issue had been finally decided by the trial court, and only the fee question remained on *appeal*, the Fifth Circuit held the case was still "pending" and that the amended version of the EAJA applied. *See Russell v. National Mediation Bd.*, 775 F.2d 1284, 1285–86 (5th Cir.1985) (case "pending" where law went into effect on same day that Fifth Circuit denied petition for rehearing en banc because plaintiff could still have petitioned for certiorari before the Supreme Court). These cases illustrate that the term "pending" includes not only cases where a decision on the merits is final, but even cases where the only remaining questions are post-judgment motions *on appeal*.

*gy*, 1 Cranch 103, 110, 2 L.Ed. 49 (1801) ("[I]f, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed").

In my view, the majority's complicated and somewhat questionable [3] analysis relating to *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), an analysis neither party's brief has suggested, unnecessarily transforms a simple case into a difficult one. This is especially true where all we have to do is apply the Supreme Court's clear mandate that amended Rule 15(c) applies to all pending cases. Here, it would be neither impracticable nor unjust to do so, because defendant Shallbetter received notice of the suit well within the time period to serve the complaint. I therefore concur in the majority's result.

**3.** *See West v. Conrail*, 481 U.S. 35, 39–40, 107 S.Ct. 1538, 1541–42, 95 L.Ed.2d 32 (1987), where the Court observes:

We decline respondents' invitation to require that when a federal court borrows a statute of limitations to apply to a federal cause of action, the statute of limitation's provisions for service must necessarily also be followed, even when the borrowed statute is to be applied in a context somewhat different from the one in which those procedural rules originated.

Inevitably our resolution of cases or controversies requires us to close interstices in federal law from time to time, but when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary.

(Footnotes omitted).