**In re COLOR TILE, INC.,
et al., Debtors.**

**Official Committee of the Unsecured
Creditors of Color Tile, Inc., et
al., Plaintiff,**

**v.**

**Pilgrim High Yield Trust,
et al., Defendants.**

**Nos. 96–76(HSB) to 96–80(HSB).
Civ.A. No. 98–358–SLR.
Adversary No. A–98–90.**

United States District Court,
D. Delaware.

April 30, 2002.

Ian Connor Bifferato, Esquire of Bifferato, Bifferato & Gentilotti, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: David F. Heroy, Esquire, Brian E. Martin, Esquire, Bruce E. Lithgow, Esquire of Bell, Boyd & Lloyd LLC, Chicago, Illinois.

Robert B. Anderson, Esquire, A. Richard Winchester, Esquire, and James J. Freebery, Esquire of McCarter & English, LLP. Counsel for State Street Research Investment Services, Inc., State Street Research Equity Trust, State Street Research Income Trust, State Street Research Growth Trust, State Street Research Strategic Growth & Income Fund, and Metropolitan Life Insurance Company.

## MEMORANDUM OPINION

ROBINSON, Chief Judge.

## I. INTRODUCTION

In this civil action, plaintiff, the Official Committee of Unsecured Creditors of Color Tile, Inc., et al., seeks to avoid certain dividend payments made to the beneficial owners of the debtor's preferred stock and to force restoration of the full dividend amounts to the bankruptcy estates.[1]

---

1. In 2000, plaintiff settled its claims against Blackstone Family Investment Partnership, L.P. a/k/a Blackstone Partners Investment Fund, L.P.; IDS Extra Income Fund, Inc.; Elise Lufkin; The Prudential High Yield Fund, Inc.; The Prudential Insurance Company of America as Investment Manager for the General Motors High Yield Account; Prudential Series Fund, Inc.; Bear Stearns & Company, Inc.; and Salomon Brothers, Inc. In 2001, plaintiff settled its claims against Northern Trust Company as Trustee of a Master Trust for the Benefit of Allied Signal, Inc. and Allied Signal Corporation; How & Co.; Morgan Guaranty Trust Company of New York, on behalf of itself and as trustee; Kelly & Co.; Northeast Investors Trust; Prudential High Yield Income Fund; and Prudential Insurance Company of America. The proceedings as to Reliance Insurance Company have been stayed by stipulation of the parties and order of this court based on the liquidation proceeding involving the defendant commenced by the Commonwealth of Pennsylvania's Department of Insurance. (D.I. 190 at 6–7, n. 6 & 7)

Plaintiff is the fiduciary appointed to represent the interests of bondholders and trade and other unsecured creditors who hold unpaid claims against the bankruptcy estates of Color Tile, Inc. and its affiliates. The challenged dividend payments were made beginning on or about January 1, 1994. The court has jurisdiction pursuant to 28 U.S.C. § 1334.

Currently before the court is a motion for summary judgment filed by the State Street Research ("SSR") defendants [2] asking the court to dismiss the second amended complaint against them as time barred and not relating back to the original complaint filed in this matter.[3] For the following reasons, the court shall grant the motion for summary judgment.

## II. BACKGROUND

In 1992, Color Tile issued 2,200,000 shares of Class B, Series A, Senior Increasing Rate Preferred Stock ("preferred shares"), the proceeds of which it used to retire approximately $47,700,000 in debt associated with its Senior Notes. Dividends of approximately $7,164,740.00 were paid to holders of the preferred shares beginning on or about January 1, 1994.

On January 24, 1996, Color Tile filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On January 15, 1998, plaintiff commenced this ad-versary proceeding against the alleged recipients of the dividends.[4] Plaintiff asserts claims under the Delaware Fraudulent Transfer Act, 6 Del. C. § 1301 *et seq.* (the "DFTA"), and 11 U.S.C. §§ 544(b) and 548(a)(2). In essence, plaintiff alleges that the preferred stock dividends were fraudulent transfers under the DFTA because they left Color Tile with unreasonably small capital and caused it to incur debts beyond its ability to pay.

The original complaint named, among others, Cede & Co. ("Cede") and the Prudential High Yield Fund ("Prudential") as defendants. According to Color Tile records, Cede held 1,454,060 shares of preferred stock. (D.I. 193, Ex. 6 at OCPS 04894) Documents from Color Tile files also show that The Prudential High Yield Fund, Inc. purchased 200,000 of the shares in 1992 and held them at State Street Bank and Trust Company ("State Street Bank"). (*Id.* at OCPS 04649 to OCPS 04199)

After filing the original complaint, plaintiff became aware that defendant Cede (the nominee for The Depository Trust Company ("DTC")) was not itself the beneficial owner of preferred stock, but instead served as a "mere conduit" for dividend payments from the issuer to the owners.[5]

---

**2.** The State Street Research defendants are State Street Research Investment Services, Inc.; State Street Research Equity Trust; State Street Research Income Trust; State Street Research Growth Trust; State Street Research Strategic Growth & Income Fund; and Metropolitan Life Insurance Company.

**3.** Plaintiff also filed a combined motion to strike and omnibus evidentiary objections to the declarations and affidavits in support of the State Street defendants' motion for summary judgment. (D.I. 191) Because the court need not rely on the challenged documents to make its decision, it declines to address plain-tiff's arguments and finds the motion to be moot.

**4.** The original complaint was filed January 12, 1998; the first amended complaint was filed September 18, 1998; and the second amended complaint was filed March 19, 2001. The amended claims dropped certain defendants and added others. The substance of the claims remained the same throughout.

**5.** DTC describes itself as a registered securities depository and "clearing house" engaged in the business of accepting eligible securities for deposit to effect book entry transfers of

(*Id.*, Ex. 1) In exchange for receiving a list of DTC/Cede participants who held Color Tile stock in their accounts and who were credited with dividend payments, plaintiff agreed to a stipulation dismissing Cede from the action. (*Id.*, Ex. 2, Ex. 4, Ex. 20) The stipulation was filed with the bankruptcy court on May 12, 1998. (Bank. D.I. 33)[6]

Based on the information provided by Cede in April 1998, plaintiff filed an amended complaint on September 18, 1998 naming a number of new defendants it believed had received dividends through the Cede "conduit," but leaving out Cede itself. This first amended complaint did not name the SSR defendants who bring the motion at bar, as plaintiff had not yet identified them as beneficial owners. Two of the newly named defendants, BTC U.S. High Yield Fund (by its trustee Brinson Trust Company) and Northstar High Yield Bond Fund, filed a motion to dismiss based on statute of limitations grounds, but this court denied the motion in a memorandum opinion and order dated February 9, 2000. (D.I. 61, 62) The court determined that the first amended complaint related back to the original complaint under Fed.R.Civ.P. 15(c), because the complaint mistakenly named Cede & Co. instead of its participant/stock owners; the new defendants knew or should have known they were the real parties in interest; and the new defendants received constructive notice of the original complaint through service on

Cede. (*Id.* at *6–*7) The court noted that "Cede's operating rules require it to notify its participants of 'documents received' with respect to a Participant's Deposited Securities" and that defendants were sophisticated investors who chose to use Cede as an intermediary, thereby assuming "the risk that service upon Cede would enable a later complaint to relate back." (*Id.* at *7)

One of the DTC participants identified on the documents that DTC provided to plaintiff in April 1998 was "SSB Custodian," a DTC participant which held its Color Tile shares in DTC account number 0997. (D.I. 193, Ex. 7, Ex. 14) Although plaintiff specifically requested that DTC provide the names and addresses for several other participants on the documents provided by DTC, plaintiff did not specifically request the name and address for SSB Custodian. (*Id.*, Ex. 9, 15) Plaintiff concluded from its review of Color Tile's records that DTC participant 0997, a/k/a SSB Custodian, was State Street Bank, the bank which held Color Tile shares for the Prudential High Yield Fund. (*Id.* at ¶ 16, 19) Plaintiff then assumed that "[s]ince Color Tile's records did not reflect that State Street Bank was a participant bank for any other owner of Color Tile preferred shares," State Street Bank served as the participant bank for the Prudential High Yield Fund alone. (*Id.* at ¶ 16, 19) As a result of these assumptions

---

deposited securities among its "participants." (D.I. 193, Ex. 1) DTC participants include broker-dealers, banks, and other financial institutions. DTC also collects interest and dividends on securities in DTC's custody and distributes them to the DTC participants. In a letter to plaintiff, DTC claimed that it exercises no discretion over any transactions, payments and credits it makes, and therefore is not an "initial transferee" under Section 550 of the Bankruptcy Code, making it an improper defendant in the original complaint. (*Id.*) *See also In re Kaiser Steel Corp.*, 110 B.R. 514,

517 (D.Col.1990) (explaining that DTC participants register their customers' securities in a nominee name so that DTC can record transactions between participants by book entry, without having to change the registration on the issuer's books, thereby simplifying securities transactions for both issuers and brokers).

6. References to "Bank. D.I." refer to the docket in the Bankruptcy Court for adversary proceeding number A–98–90.

regarding State Street Bank and the Prudential High Yield Fund, plaintiff increased the amount of dividends it alleged had flowed to Prudential from $920,642 (the amount alleged in April 1998, see *Id.* at ¶ 16, and Ex. 13), to $1,708,094.90 (the amount alleged in June 1998, see *Id.*, Ex. 21, 26, 27), with the former number based upon the 200,000 Prudential shares recorded at Color Tile and the latter number apparently based upon the transactions to the SSB Custodian account at DTC. There is no evidence or assertion on the record that plaintiff ever tried to contact State Street Bank directly at this time to confirm any of these assumptions.

In June 2000, plaintiff finally became aware as a result of discovery and settlement negotiations with the Prudential High Yield Fund that State Street Bank and its participant account at DTC were used for other clients besides the Prudential fund. (*Id.*, Ex. 29) In a letter dated August 22, 2000, State Street Bank provided plaintiff with the names of its clients and the amounts they received in dividend payments for the Color Tile stock. (*Id.*, Ex. 36) These named clients included the SSR funds later added as the SSR defendants. This new information served as the basis for plaintiff's second amended complaint filed on March 19, 2001, after this court granted its motion for leave to amend. The second amended complaint added the six SSR defendants who filed the motion at bar.

Although plaintiff refers to the SSR defendants as "affiliates" of State Street Bank (D.I. 190 at 13), the SSR defendants assert that State Street Bank is a completely separate entity (D.I. 187 at 4 n. 4). The only record evidence about the relationship between State Street Bank and the SSR defendants are letters written by State Street Bank wherein it acknowledges that the SSR defendants were clients and that State Street Bank is a "custodian" for its clients' funds. (D.I. 193, Ex. 33, Ex. 36) The parties apparently agree that dividends for the SSR defendants' stock flowed from Color Tile to Cede to State Street Bank to the SSR defendants.

Plaintiff also provides evidence that the SSR defendants purchased their Color Tile stock from the Prudential High Yield Fund and used Bear Stearns as the broker; both the Prudential fund and Bear Stearns were defendants named in the original and first amended complaints. (D.I. 206, 208)

The SSR defendants now seek summary judgment that the action against them is barred by the statute of limitations. Plaintiff asserts that the complaint relates back or, in the alternative, that the doctrine of equitable tolling or the doctrine of equitable estoppel applies to this case.

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an

absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

The SSR defendants contend that plaintiff's second amended complaint is time barred and does not relate back to the original complaint under Fed.R.Civ.P. 15(c)(3). Plaintiff filed the second amended complaint on March 19, 2001, more than two years after Color Tile's bankruptcy filing. Consequently, the complaint falls outside the two year statute of limitations period imposed by 11 U.S.C. § 108(a)(2). Therefore, unless the second amended complaint relates back to the filing date of the original complaint, plaintiff's claims against the SSR defendants must be dismissed.

For an amended complaint to relate back to the filing date of the original complaint, the claim must have arisen out of the same transaction or occurrence set forth in the original pleading and,

> within the period provided by Rule 4(m) for service of the summons and complaint [i.e., 120 days after filing of the complaint], the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3). The parties here agree that the second amended complaint arose out of the same transaction as the original complaint, so the court addresses only the notice and mistake elements of the rule.

### A. Mistake

Defendants argue that the "mistake" plaintiff made in not naming the SSR funds as defendants in the original complaint does not fall within the meaning of "mistake" in Rule 15(c)(3)(B), because plaintiff's mistake was due to a lack of knowledge about who the correct defendants were.

While defendants are correct that several circuits have held that a "lack of knowledge" is not a mistake within the meaning of Rule 15(c)(3)(B), the Third Circuit favors a different view. In *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir.1977), the Third Circuit allowed an amended complaint to "relate back" where the original complaint named an "unknown employee" as well as the employer as defendants, and plaintiff sought to amend the complaint with the employee's name upon learning of his identity. The newly named employee admitted that he had seen a copy of the original complaint naming both the employer and an unknown employee, and

he had known at the time that the "unknown employee" referred to him. The court held this was sufficient to satisfy the requirements of Rule 15(c). *Id.* at 175. The Third Circuit endorsed this decision recently in *Singletary v. Pennsylvania Department of Corrections*, 266 F.3d 186 (3d Cir.2001), where it opined that allowing the amendment of so-called "John Doe" complaints was supported by the weight of scholarly commentary on the subject.[7] *Id.* at 201 & n. 5. *See also Sendobry v. Michael*, 160 F.R.D. 471, 473 (M.D.Pa.1995); *Heinly v. Queen*, 146 F.R.D. 102, 107 (E.D.Pa.1993); *Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.*, 801 F.Supp. 1450, 1457 (E.D.Pa.1992). The court explained that fairness to the newly added defendants is ensured by the other provisions of Rule 15(c)(3), which require that the new defendants must have received adequate notice within 120 days of the complaint filing date and that the defendants must have known or should have known that the original complaint would have been directed against them but for the mistake. *Id.* at 201 n. 5. Indeed, under the facts of *Singletary*, the court questioned whether the newly named defendant in that case, who was a psychologist working for the corrections department, could have known that the original complaint referred to him when it named "Unknown Corrections Officers." *Id.* at 201.

The *Singletary* court ultimately refused to answer the mistake question, instead basing its decision on notice, but it clearly expressed opposition to the other circuits' narrow interpretation of "mistake" and expressed its own preference for allowing "lack of knowledge" to qualify as a mistake under Rule 15(c)(3)(B). *Id.*

In the case at bar, plaintiff mistakenly named Cede in its original complaint because it did not know that the SSR defendants, rather than Cede, were the beneficial owners of certain shares of Color Tile stock. This mistake was understandable since Cede was registered with Color Tile as the owner of the stock, and the dividends were sent from the issuer to Cede. While this is not identical to a case where "John Doe" in the caption is clearly a placeholder for an unknown defendant (here, plaintiff named Cede specifically), the important point is that plaintiff lacked information about the true identity of the beneficial owners of the stock at the time it filed the original complaint, through no fault of its own. Only Cede and its participant State Street Bank possessed the information necessary for plaintiff to determine who the proper defendants were, so it was only fair that plaintiff be given the opportunity through discovery to determine the identities of the true stock owners.[8]

7. The *Singletary* court criticized other circuit courts' position, which "centers on the linguistic argument that a lack of knowledge of a defendant's identity is not a 'mistake' concerning that identity," calling this position "highly problematic," especially for victims of civil rights abuses who cannot obtain the specific identities of those who violated their rights until they have had a chance to undergo extensive discovery. *Singletary*, 266 F.3d at 201 & n. 5. The court expressed its belief that allowing amendment of "John Doe" complaints brought Rule 15(c) "more clearly into alignment with the liberal pleading practice policy of the Federal Rules of Civil Proce-

dure" and focused the court's considerations on the merits of a claim rather than on technicalities. *Id.* at 201 n. 5.

8. Defendants argue that DTC participant lists are readily available upon request by the stock issuer or stock holders. However, plaintiff here represents the unsecured creditors of the issuer's bankruptcy estates, not the stock issuer or stock holders, so this avenue of discovery did not appear to be open to plaintiff until after it filed suit against Cede and could then subpoena its records.

■ The court concludes, therefore, that plaintiff's lack of knowledge is a cognizable mistake under Rule 15(c)(3)(B). The court also concludes that, if the SSR defendants are deemed to have received notice under Rule 15(c)(3)(A) (discussed below), the SSR defendants knew or should have known that they would have been named in the original complaint, but for the mistake. The complaint clearly targets all beneficial owners of Color Tile preferred shares who received dividends beginning on or around January 1, 1994. If they received notice of the complaint, the SSR defendants would have known or should have known they were part of the targeted defendant group.

### B. Notice

The SSR defendants assert that the second amended complaint cannot relate back to the original complaint because they did not receive notice of the action within 120 days of its institution as required by Rule 15(c)(3)(A).[9]

■ Courts in the Third Circuit have interpreted the notice requirement under Rule 15(c) broadly to include actual, constructive, or imputed notice through formal and informal channels. *See Resource Ventures, Inc. v. Resources Management Int'l, Inc.*, 42 F.Supp.2d 423, 429 (D.Del. 1999). The Third Circuit in *Singletary* explained that "Rule 15(c)(3) notice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary*, 266

F.3d at 195. "At the same time, the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." *Id.* The *Singletary* court recognized that, in addition to actual notice, there are two means of imputing the notice received by the original defendant to the new defendant: "(i) the existence of a shared attorney between the original and proposed new defendant; and (ii) an identity of interest between these two parties." *Id.* at 189.

■ Plaintiff in the case at bar asserts that defendants either received actual notice or that notice can be imputed through an identity of interest between several of the original defendants and the new defendant. " 'Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to prove notice of the litigation to the other.' " *Id.* at 197 (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1499, at 146 (2d ed.1990)). Courts have applied the identity of interest principles "where the original and added parties are a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past and present forms of the same enterprise, or co-executors of an estate." *Jimenez v. Toledo*, 604 F.2d 99, 102 (1st Cir.1979). *See also Sorrels v. Sears, Roebuck & Co.*, 84 F.R.D. 663, 667 (D.Del.1979) (finding identity of interest where defendants were past and present

9. Plaintiff argues in its brief that the amended complaint relates back because defendants did not suffer prejudice in maintaining a defense. Under the terms of Rule 15(c)(3)(A), defendants must receive sufficient notice and must not be prejudiced, not one or the other. The court addresses only notice in the case at bar, however, because it is not necessary to reach the prejudice issue.

forms of same enterprise); *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 621 F.Supp. 310, 314 (D.Del.1985) (finding identity of interest where new defendant is a subsidiary of original corporate defendant); *cf. In re Convertible Rowing Exerciser Patent Litigation*, 817 F.Supp. 434, 442 (D.Del.1993) (finding no identity of interest where an unincorporated subsidiary that was autonomous and had different management was the original named defendant).

■ Plaintiff offers no evidence of actual notice to the SSR defendants to meet its burden under Rule 15(c)(3)(A), only inferences and speculation, so the court moves on to examine whether notice can be imputed to defendants. Plaintiff's primary argument for imputing notice is its contention that Cede and State Street Bank acted as subagent and agent for defendants and, therefore, actual notice to Cede was constructive notice to State Street Bank and thus to the SSR defendants. The parties concede that Cede received proper notice within the limitations period. The disagreement focuses on whether the relationships between Cede, State Street Bank, and the SSR defendants allow the court to impute notice through to the new defendants.

This court determined in a February 2000 order that notice to Cede was constructive notice as to several DTC participants named as defendants in the first amended complaint. These DTC partici-pants occupy the same position as the State Street Bank does here. Despite the existence of some additional evidence on this issue, the court finds no need to revisit its earlier decision, because the SSR defendants are another step removed from DTC/Cede and, therefore, distinguishable.

The only record evidence about the relationship between State Street Bank and the SSR defendants, two letters written by State Street Bank, demonstrates that the SSR defendants are clients of State Street Bank and that State Street Bank is the custodian of their stock holdings. Plaintiff offers no evidence about the nature of the custodial agreement between the parties from which the court could conclude that State Street Bank acted as an agent for SSR funds such that it was responsible for forwarding notice of legal actions to them. In addition, no evidence of record demonstrates that State Street Bank and the SSR defendants are related corporations or are otherwise closely related in their business activities. The finder of fact could not conclude on this sparse evidentiary record that "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to prove notice of the litigation to the other." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1499, *supra.*[10]

Because plaintiff has failed to make a sufficient showing that the SSR defendants

---

10. Plaintiff cites two Ninth Circuit cases in which notice to an agent was imputed to the principal, but they are distinguishable because the evidence established an identity of interest between the agent and the principal in each case. *See G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498 (9th Cir. 1994) (finding a "community of interest"); *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397 (9th Cir.1984) (finding the agent and principal were related corporations).

Plaintiff also offers evidence that two other defendants in the original complaint, Bear Stearns and the Prudential High Yield Fund, knew from the beginning that the SSR defendants were beneficial owners of Color Tile stock, because they were involved in the sale of the stock to the SSR funds. Plaintiff cannot establish an "identity of interest" between the other defendants and the SSR defendants based on this stock sale alone.

**376**

received notice under Rule 15(c)(3)(A), as the nonmoving party must do "on an essential element of its case with respect to which it has the burden of proof," the SSR defendants are entitled to summary judgment. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### C. Equitable Tolling and Equitable Estoppel

Even if the second amended complaint cannot relate back under the terms of Rule 15(c)(3), plaintiff argues that either the doctrine of equitable tolling or the doctrine of equitable estoppel should allow its suit against the SSR defendants to proceed.

 Equitable tolling of the statute of limitations is applied narrowly, even in cases of attorney error. *Seitzinger v. The Reading Hospital and Medical Center,* 165 F.3d 236, 239 (3d Cir.1999). Plaintiff possessed the means to determine the identity of the SSR defendants as early as April 1998, and failed to follow through on it promptly because of its own mistaken assumptions. The court finds no basis for equitably tolling the statute of limitations now for the second amended complaint.

 The court declines to apply the doctrine of equitable estoppel for similar reasons. While plaintiff may have lacked a means for identifying the SSR defendants before filing the original complaint, it possessed such means by April 1998, before it filed its first amended complaint. The SSR defendants did nothing after this time to conceal its identity from plaintiff or cause any prejudice to plaintiff. As a result, the court finds no reason to estop defendants from asserting the statute of limitations defense. *See King v. Miyata Bicycle of America, Inc.,* 1993 WL 141065, *2-*3 (Del.Super.Ct.1993); *Wilson v. American Ins. Co.,* 209 A.2d 902, 903-4 (Del.1965).

## V. CONCLUSION

Because plaintiff does not present sufficient evidence that the second amended complaint relates back to the original complaint under Rule 15(c)(3), the court grants the SSR defendants' motion for summary judgment that the action is barred against them by the statute of limitations. An appropriate order shall issue.

### ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by the State Street Research defendants (D.I. 187) shall be granted.

2. The motion to strike and omnibus evidentiary objections filed by plaintiff (D.I. 191) shall be denied as moot.

