

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2004

# In Re: Color Tile

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2932

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Color Tile " (2004). *2004 Decisions.* Paper 1010.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1010

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 02-2932 and 02-4294

_____

IN RE: COLOR TILE INC

_____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
*Appellant*

v.

RELIANCE INSURANCE COMPANY; BLACKSTONE FAMILY INVESTMENT
PARTNERSHIP;
PILGRIM HIGH YIELD TRUST; BANKERS TRUST CO.; IDS EXTRA INCOME
FUND, INC.; DAN LUFKIN; ELISE LUFKIN; NORTHERN TRUST COMPANY,
as Trustee of a Master Trust for the Benefit of the Allied Signal, Inc.;
ALLIED SIGNAL CORP.; PRUDENTIAL HIGH YIELD FUND, INC.;
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, as Investment Manager
for the General Motors High Yield Account; GENERAL MOTORS,
General Motors High Yield Account; THE PRUDENTIAL SERIES FUND, INC.;
RIVERSIDE CAPITAL ADVISORS, INC.; BEARS STERNS & COMPANY, INC;
MORGAN GUARANTY TRUST CO. OF NEW YORK; ATWELL & CO.; HOW &
COMPANY;
KELLY & CO.; BTC US HIGH YIELD FUND; NORTH BROWARD RADIOLOGISTS, P.A.
Profit Sharing Plan for the Benefit of Carl C. Peterson, M.D. and
Walter F. Ciceric, M.D.; NORTHEAST INVESTORS TRUST; NORTHSTAR HIGH
YIELD BOND FUND; RIVERSIDE INCOME FUND, LTD; SALOMAN BROTHERS, INC.;
STATE STREET RESEARCH STRATEGIC GROWTH & INCOME FUND; STATE STREET
RESEARCH
INCOME TRUST; STATE STREET RESEARCH EQUITY TRUST; STATE STREET
RESEARCH
INVESTMENT SERVICES, INC.; STATE STREET GROWTH TRUST;
METROPOLITAN LIFE INSURANCE COMPANY

_____

On Appeal From the United States District Court
For the District of Delaware
(D.C. No. 98-cv-00358)
District Judge: Honorable Sue L. Robinson

_____

Argued January 12, 2004
Before: SMITH, CHERTOFF and BECKER, *Circuit Judges.*

(Filed:  February 11, 2004)

DAVID F. HEROY, ESQUIRE
BRIAN E. MARTIN, ESQUIRE (Argued)
KEVIN Y. PAK, ESQUIRE
Bell, Boyd & Lloyd
70 West Madison, Suite 3300
Chicago, Illinois 60602

IAN CONNOR BIFFERATO, ESQUIRE
MEGAN N. HARPER, ESQUIRE
Bifferato, Bifferato & Gentilotti
1308 Delaware Avenue
Wilmington, Delaware 19806

    *Attorneys for Appellants*

PAUL A. BRADLEY, ESQUIRE (Argued)
A. RICHARD WINCHESTER, ESQUIRE
JAMES J. FREEBERY, ESQUIRE
McCarter & English, LLP
919 N. Market Street, Suite 1800
Wilmington, Delaware 19801-3023

    *Attorneys for Appellees*

———————————————————

OPINION OF THE COURT
———————————————————

BECKER, *Circuit Judge.*

This is an appeal by Plaintiff, The Official Committee of Unsecured Creditors of

Color Tile, Inc., a debtor in Delaware Bankruptcy Court, from an order granting summary

judgment to defendant State Street Research Investment Services, Inc. (and affiliated

mutual fund defendants) (collectively, the "SSR defendants") in an adversary proceeding

before the District Court which had withdrawn the reference.  For the reasons that follow,

we vacate the judgment and remand for further proceedings.

I.

A.

The original complaint alleged *inter alia* that: (1) in 1992, Color Tile issued

2,200,000 shares of Class B, Series A, Senior Increasing Rate Preferred Stock; (2) from

January 1994 through approximately January 1995, Color Tile paid approximately

$10,000,000 in dividends to holders of its preferred stock; and (3) the dividend payments

constituted constructively fraudulent transfers, because the payments were made when

Color Tile was insolvent and the payments left Color Tile with unreasonably small capital

or caused Color Tile to incur debts beyond its ability to pay.

The Depository Trust Company ("DTC") is an association of more than 200

brokerage houses and financial institutions which was formed pursuant to Congressional mandate for the purpose of owning shares in street name for the beneficial interest of customers. Cede & Co. ("Cede") is the name used by DTC to hold shares that it owns. Among other services not relevant here, Cede transmits the dividends received from issuers to the beneficial owners, through "participating" or "depository" banks acting as conduits.

The original complaint named Cede as a defendant in the suit. Cede was the record owner of approximately 1,460,000 shares of Color Tile preferred stock and received approximately $6,468,811 of the dividend payments during the relevant period. After filing its original complaint, the Committee discovered that Cede had been mistakenly named as a defendant because it had acted only as a conduit for the dividend payments made to the beneficial owners. The Committee subsequently agreed to dismiss Cede as a named defendant without prejudice in exchange for Cede providing all the information it possessed concerning the identities of the beneficial owners of the preferred stock. Without ascribing blame (either to the plaintiff for lack of diligence or to the original defendants for obfuscation and non-cooperation), we simply state that the plaintiff did not discover the identify of the present defendants until after the statute of limitations had run.

The issue before us, arising out of the plaintiff's second amended complaint, centers around the Committee's ability to have discovered earlier exactly who the

4

beneficial owner was of some of this preferred stock. In legal terms, the appeal turns on the relation-back provisions of Fed. R. Civ. P. 15(c)(3)[1] (as applied to the plaintiff's two amended complaints) and on whether the District Court erred in determining that the plaintiff's claim must fail because defendants did not receive notice of the suit within the meaning of Rule 15(c)(3) so as to avoid the bar of the statute of limitations. The factual and procedural history, including the two amended complaints, is well known to the parties, for whom we primarily write, hence we will limit ourselves to the essentials.

B.

In support of its contention that the notice provision is satisfied, plaintiff cites to the District Court's February 9, 2000 opinion which denied the motions to dismiss filed by all defendants. In so ruling, the Court compared the first amended complaint to the original complaint under Fed. R. Civ. P. 15 (c) and found that the first amended complaint related back to the filing of the original complaint because: (1) it was "identical to the original complaint"; (2) the original complaint named Cede which held legal title to

---

[1]Rule 15(c)(3) provides:

> An amendment of a pleading relates back to the date of the original pleading when . . . . (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

5

the shares and was the agent for entities known as BTC and Northstar, who were beneficial owners of Color Tile stock, and (3) BTC and Northstar received actual or constructive notice of the Committee's suit within 120 days following the filing of the original complaint since the original complaint was served on Cede, which acted as Northstar and BTC's agent, and they thus knew or should have known that, but for the Committee's mistake, they would have been named instead of Cede. (Vol. II A265-266). The Court held that "BTC, and Northstar [received] constructive notice of Plaintiff's suit," satisfying the notice requirement under Fed. R. Civ. P. 15 (c). (Vol. II, A-265-267). The Court stated:

> As sophisticated investors who chose to use Cede as an intermediary, BTC, Brinson, and Northstar assumed the risk that suits arising out of their ownership of Color Tile preferred shares would name only Cede. These defendants also assumed the risk that service upon Cede would enable a later complaint to relate back.

Plaintiff invokes the law of the case doctrine and argues that the February 9, 2000 opinion controls at the current stage of the proceeding, creating constructive notice and foreclosing summary judgment. The defendants disagree, and to explain our ruling, we need to describe some interim history.

On July 31, 2000, the Committee caused subpoenas to be issued to the Records Custodian of State Street Corporation in Massachusetts and Missouri. On August 22, 2000, Lawrence Eastman, the Assistant Vice President of State Street Bank sent a letter to the Committee in which he identified the clients of State Street Bank and the amounts

they received in dividend payments. This letter explained that State Street Bank served as the participating bank for Prudential High Yield Fund ("PHY") and also for the SSR defendants. Apparently, this was the first time the Committee learned that State Street Bank was the participant bank for entities other than PHY.[2]

## C.

On November 29, 2000, the Committee moved for leave to file a second amended complaint adding new defendants and alleging that the SSR defendants received $579,553 in dividend payments during the relevant period. The Court granted the Committee's motion on March 7, 2001, and the second amended complaint was filed,

---

[2] Until this time, the Committee had assumed that PHY was the only beneficial owner for which State Street Bank operated as the participant bank. On or about April 6, 1998 the Committee received a letter from Mr. Montal, DTC's attorney, with two spreadsheets that showed the participant numbers and participant banks at the DTC which received the dividend payments. (Vol III, A501-520). These documents indicated that participant number 997, "SSB Custodian," acted as the participant bank to beneficial owners of the Preferred Stock that received $1,708,095 in dividend payments. (Vol III, A504-520). This came as something of a surprise to the Committee because earlier indications led it to believe that PHY had received $920,642 in dividend payments. Accordingly, the Committee sought more information from DTC regarding the recipients of the dividend payments for account 997. Pursuant to the Bankruptcy Court's Scheduling Order, the Committee informed PHY that it believed PHY had received $1,708,094.90, rather than $920,642 as it had earlier believed. (A581-582). The Committee asked PHY to "[p]lease confirm the stock ownership and dividend payments made to these parties as described in this letter." (A581-582). The Committee received no response. The Committee asserts that it viewed PHY's silence as a tacit confirmation that it had received $1.7 million in dividend payments since PHY was under the Bankruptcy Court's Discovery and Scheduling Order to dispute the amount of the dividend payments to the extent that it differed from the amount alleged by the Committee and to identify to the Committee, if known, other "beneficial holders of such stock and the amount of dividends received by such beneficial holders." (Vol II, A036).

7

seeking recovery of the dividend payments, plus prejudgment interest. The important difference between the first and second amended complaints is that the second added the SSR defendants.

On December 20, 2001, the SSR defendants moved for summary judgment asserting that the second amended complaint was barred by the two year statute of limitations under 11 U.S.C. § 108(a) because it was filed more than two years after the petition date. On April 30, 2002, the Court granted the SSR defendants' motion (the "4/30/02 Opinion"). In the 4/30/02 Opinion, the Court found that (i) the same transaction requirement was met; and (ii) the Committee had presented sufficient evidence to indicate that the failure to name the SSR defendants was due to a "cognizable mistake under Rule 15(c)(3)(B)." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Pilgrim High Yield Trust*, (*In re Color Tile, Inc.*) 278 B.R. 366, 373-74 (D. Del. 2002). The District Court opined that the "mistake was understandable" given that the "plaintiff lacked information about the true identity of the beneficial owners of the stock at the time it filed the original complaint, through no fault of its own" and that "[o]nly Cede and its participant State Street Bank possessed the information necessary for plaintiff to determine who the proper defendants were . . . so it was only fair that plaintiff be given the opportunity through discovery to determine the identities of the true stock owners." *Id.* at 373.

The District Court went on to hold, however, that the Committee had failed to

provide sufficient evidence to create a genuine issue of material fact that the SSR

defendants received actual, constructive, or imputed notice for relation back. The Court

reasoned that the Committee "failed to make a sufficient showing that the SSR defendants

received notice under Rule 15(c)(3)(A), as the nonmoving party must do 'on an essential

element of its case with respect to which it has the burden of proof.'" *Id.* at 375-76

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The District Court also

found, as a factual matter, that BTC and Northstar were situated in "distinguishable"

positions compared to the SSR defendants. *Id.* at 375. Without providing a rationale for

doing so, the Court stated that it found "no need to revisit its earlier decision, because the

SSR defendants are another step removed from DTC/Cede." *Id*. Thus the Court ruled

that the fact that the February 9, 2000 opinion had held that BTC and Northstar had

received notice for purposes of relation back did not apply here and that summary

judgment for SSR defendants was therefore in order.

D.

We disagree with the District Court's "one step removed" conclusion. The

relationship among the actors is described by the following chart:

| DTC Nominee | Depository Bank | Beneficial Owner |
|---|---|---|
| Cede | First National Bank of Chicago | BTC |
| Cede | Custodial Trust Company | Northstar |
| Cede | State Street Bank | SSR defendants |

As counsel for defendants conceded at oral argument before us, the SSR defendants are

situated in *exactly* the same position as the beneficiaries identified in the District Court's

February 9, 2000 opinion.

Moreover the plaintiff's constructive notice argument is buttressed by two documents in the record that were not focused on by the District Court. The first is the "Rules, By-Laws and Organization Certificate of the Depository Trust Company," which provides in Rule 6:

> Subject to the provisions of these Rules and the Procedures, the Corporation, acting in accordance with duly authorized instructions from the Participant or Participants and the Pledgee or Pledgees, if any, having an interest in the transaction, shall, . . . deliver dividends, distributions, rights, securities, proxy material and other property or documents received by the Corporation with respect to a Participant's Deposited Securities or Pledged Securities, except as provided below in this Rule or in the Procedures.

(Vol. II, A-179).

The second is the contract between State Street Bank and SSR defendants (the 'custodial agreement") which provides in Section 2.14: "The Custodian shall transmit promptly to the Fund all written information . . . received by the Custodian from issuers of the domestic securities being held by the Fund." (Vol. IV, A-979).

## II.

Defendants contend that plaintiff's arguments on notice are flawed. First, they contend that the law of the case doctrine does not operate to render the February 9, 2000 opinion, rendered on a Rule 12(b)(6) motion, applicable in a summary judgment context. Second, seizing on plaintiff's concession at oral argument that there is no evidence in the record that State Street Bank ever received actual notice of the suit (it is also clear that the defendants did not receive notice), defendants argue that constructive notice cannot

10

surmount a double linkage, i.e., Cede to State Street Bank, and the Bank to the SSR defendants. Plaintiff rejoins that the law of the case does apply because whatever differences there may be on the factual record, the legal issue with respect to the two motions is the same and that it is the legal issue that matters. Moreover, in plaintiff's submission, the legal reasoning of the District Court's February 9, 2000 opinion was correct, and hence constructive notice is established.[3] Secondly, plaintiff submits that any lacuna is filled in by the DTC regulations and the custodial agreement.

We are sympathetic to plaintiff's position. It would seem to us untoward that a depository bank that acts as a conduit for the transmission of dividends (which perforce it must transmit) and keeps the financial record of these transmissions, would not have the obligation to notify the beneficiaries of a claim to recover some of these same dividends. And there seems to be no doubt of the obligation of DTC or its nominee to notify the depository bank of the claim. On the other hand, the notion of double imputation, i.e. that the agent's lack of knowledge is cured by imputation of knowledge through his (second-level) agent, is problematic. Morever, this issue was not adequately briefed by the parties.

Therefore, rather than resolve these issues now, we will vacate the judgment and remand the case to the District Court so that the parties may conduct a round of discovery directed to: (1) whether State Street Bank received actual notice; and (2) the scope of the obligations of DTC or Cede and State Street Bank to pass on notice in such a manner that

---

[3]Defendants believe that the February 9, 2000 opinion was incorrectly decided.

11

it reaches the beneficiaries. We believe that a developed factual record, particularly as to whether SSB received actual notice, as well as on the constructive notice issues, will be helpful in resolving the legal issues.

The District Court should act promptly to fix a short discovery schedule (e.g., 60 days), and then should expeditiously reexamine the case in light of the discovery and of this opinion.[4] In the event that the case should be appealed again, the Clerk shall refer the appeal to this panel. The parties shall bear their own costs.

---

[4]The need for expedition in discovery and decision making is underscored by the long delays that have attended this case. We are conscious that the District Court in Delaware is heavily burdened with bankruptcy cases (because of its huge bankruptcy docket and acute shortage of bankruptcy judges) and complex patent cases, which may explain why the District Court took nearly seventeen months to decide the original motion to dismiss, and stayed discovery during that time (though such a long delay is troubling). The case was also delayed during the appeal because it was unclear until we decided *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003), that a creditors' committee could bring this type of action.

12