## In re COLOR TILE, INC. et al., Debtors.

Michael R. Buchanan, as Disbursing Agent Under the Plan of Liquidation (formerly the Official Committee of Unsecured Creditors of Color Tile, Inc., et al. On behalf of the Chapter 11 Estates of Color Tile, Inc., and Color Tile Holdings, Inc., et al.), Plaintiff,

v.

State Street Research Equity Trust, State Street Research Income Trust, State Street Research Growth Trust, State Street Growth & Income Fund and State Street Research Investment Services, Inc., Defendants.

Bankruptcy Nos. 96–76(HSB) through 96–80(HSB).
Adversary No. 98–90.
Civ. No. 98–358–SLR.

United States District Court, D. Delaware.

Oct. 6, 2004.

Ian Connor Bifferato, Joseph K. Koury, Bifferato, Bifferato & Gentilotti, Wilming-ton, DE, for Plaintiff. Of Counsel: Brian E. Martin, Kevin Y. Pak, Bell, Boyd & Lloyd LLC, Chicago, IL.

Paul A. Bradley, A. Richard Winchester, James J. Freebery, McCarter & English, LLP, Wilmington, DE, for State Street Research Equity Trust, State Street Research Income Trust, State Street Research Growth Trust, State Street Growth & Income Fund, and State Street Research Investment Services.

## OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

On January 15, 1998, plaintiff[1] filed its initial complaint against, *inter alia,* Cede & Co. ("Cede"), asserting that dividends Color Tile paid to Cede and other corporations were fraudulent transfers that should be returned to plaintiff. (D.I. 288 at 2) Several years after its initial complaint, plaintiff discovered that defendants[2] were also beneficial owners of this preferred stock. (*Id.* at 3) Plaintiff filed an amended complaint to include defendants. (D.I. 286 at 2) Defendants thereafter filed a motion for summary judgment asserting that the amended complaint was barred by the statute of limitations. (*Id.*) This court issued an order granting the defendants' motion. (D.I. 218) The Third Circuit vacated the judgment and remanded the case so that the parties could conduct a round of discovery directed to: (1) whether State Street Bank & Trust ("State Street

---

1. Originally plaintiff in this case was the Committee of Unsecured Creditors of Color Tile (the "Committee"). (D.I. 288 at 1) The Committee filed the original complaint in this case. Currently, plaintiff is Michael R. Buchanan, the disbursing agent under the plan of liquidation and the successor in interest to the Committee. (*Id.* at 1)

2. Defendants are State Street Research Equity Trust, State Street Research Income Trust, State Street Research Growth Trust, State Street Growth & Income Fund, and State Street Research Investment Services.

Bank")[3] received actual notice of this action; and (2) the scope of the obligations of the Depository Trust Company[4] or Cede and State Street Bank to pass on notice in such a manner that it reaches the beneficiaries. *In re Color Tile, Inc.*, Nos. 02–2932 and 02–4294, 92 Fed.Appx. 846, — — — —, slip op. at 11–12 (3d Cir.2004). Currently before the court are the parties' cross-motions for summary judgment. (D.I. 285, 287)

## II. FINDINGS OF FACT

### A. The Relationship Between The Depository Trust Company, Cede & Co., State Street Bank, and Color Tile

1. The Depository Trust Company ("DTC") is an association of more than 200 brokerage houses and financial institutions formed pursuant to Congressional mandate for the purpose of holding shares for the benefit of its members, which are called "Participants." *In re Color Tile, Inc.*, Nos. 02–2932 and 02–4294, 92 Fed. Appx. 846, 850 (3d Cir.2004).

2. Cede & Co. ("Cede") is the name used by DTC to hold shares it owns. (D.I. 288 at 5)

3. Defendants State Street Research Equity Trust, State Street Research Income Trust, State Street Research Growth Trust, State Street Growth & Income Fund, and State Street Research Investment Services (the "SSR Defendants") hired State Street Bank to provide custody and accounting-related services for their mutual funds. (D.I. 281 at 146) State Street Bank is a Participant of DTC. (D.I. 286 at 5)

3. Defendants hired State Street Bank to provide custody and accounting-related services for their mutual funds. (D.I. 281 at 146)

4. The Depository Trust Company holds shares for the benefit of its members, which are

4. The SSR Defendants are not Participants of DTC. (*Id.* at 5) However, each SSR Defendant has a "Custodian Agreement" with State Street Bank, which sets forth the rights and obligations of each party. (*Id.*)

5. In 1992 Color Tile issued 2,200,000 shares of Class B, Series A, Senior Increasing Rate Preferred Stock (the "Preferred Stock"). (D.I. 288 at 1)

6. On August 13, 1992 Cede was registered in Color Tile's corporate register as the stockholder of record for 1,454,060 shares of Preferred Stock and a stock certificate in the name of Cede for the 1,454,060 shares was delivered to DTC. (*Id.* at 1, D.I. 281 at 105–06)

7. The SSR Defendants used the services of DTC Participant State Street Bank to facilitate these defendants' acquisition of Color Tile's Preferred Stock from Cede. (D.I. 288 at 2) Cede continued to act as a conduit for the payment of dividends made on the Color Tile Preferred Stock. (D.I. 281 at 35–36)

8. On January 24, 1996 Color Tile filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *In re Color Tile, Inc.*, No. 98–358, 2000 WL 152129, slip op. at 1 (D.Del. Feb. 9, 2000).

### B. Whether State Street Bank Received Actual Notice

9. Plaintiff served DTC with a copy of the original complaint by early 1998. (D.I. 281 at 43)

10. DTS offered Participants access to its Legal Notice System ("LENS"). (*Id.*

called "Participants." (D.I. 286 at 5) It also facilitates settlement of security transactions between its Participants. (D.I. 288 at 2) State Street Bank is a Participant of the Depository Trust Company. (D.I. 286 at 5)

at 76) LENS provided Participants with four types of notices, including legal notices. (*Id.* at 82)

11. According to a LENS Procedures document from 1991, "[a]ll notice information is retained on the system for one year." (*Id.* at 76) However, defendants offered evidence of documents retained on LENS for at least two years. (*Id.* at 99)

12. Several legal documents from federal bankruptcy courts have been posted on LENS.[5] (*Id.* at 73–76, 123)

13. In 2001 Susan Geigel, Director of Legal and Regulatory Compliance at DTC, asked the Operations Department at DTC to see if plaintiff's complaint had been placed on LENS. (*Id.* at 47) The Operations Department was unable to find the complaint. (*Id.*)

14. Geigel stated that DTC "did not send a copy of the [c]omplaint to State Street Bank, nor was State Street Bank otherwise informed by Cede or DTC of a[c]omplaint." (*Id.* at 44)

15. Brian F. O'Leary is an operations manager in charge of voluntary and involuntary corporate actions (e.g., reorganization) at State Street Bank. (*Id.* at 101–02) O'Leary never saw plaintiff's original complaint until his deposition by plaintiff in 2004. (*Id.* at 132)

16. Timothy J. Panaro is Vice President and unit head in Investor Services at State Street Bank. (Id. At 146) Panaro had employees in his group pull files going back to 1998, and "found no communica-

tion, or no notification relating to Color Tile." (D.I. 280 at B–12)

17. In February of 1998 Maureen Baker, an employee of Prudential Insurance Company[6] ("Prudential"), asked Steven Craig, an employee of State Street Bank, to confirm to her what income had been paid to Prudential by Cede. (D.I. 281 at 171) Initially, Craig did not recall Baker mentioning that Prudential needed this information because it had been sued. (*Id.* at 171) However, Craig also received an email from Ellen Miegs, another employee of State Street Bank, indicating that "[t]his is an urgent request for Pru[dential]! They are being sued by this bankrupt company." (*Id.* at 173) In response Craig sent Baker a letter regarding dividends paid to Prudential by Color Tile. (*Id.* at 172)

18. In February of 1998 Matthew Malkasian, an employee of State Street Bank, sent an email to Paul Parseghian, an employee of Prudential, with an attached spreadsheet detailing dividends paid by Cede to Prudential. (*Id.* at 179–80) Malkasian did not have any recollection as to why Prudential asked for the Cede dividend history. (*Id.* at 182)

### C. Whether DTC and State Street Bank Were Obligated to Forward the Notice of the Complaint to Defendants

19. DTC Rule 6, "Services," states: "Subject to the provisions of these Rules and the Procedures [DTC] acting in accor-

---

**5.** Plaintiff produced four documents from federal bankruptcy courts. The first was an order from the United States Bankruptcy Court for the Southern District of New York directing a debtor to solicit acceptances or rejections to the consolidated first amended plan of reorganization. (D.I. 281 at 73) The second document was a notice of a hearing before the United States Bankruptcy Court for the District of Delaware. (*Id.* at 74) The third document produced by plaintiff was a notice

for a hearing in the voluntary bankruptcy of Color Tile. (*Id.* at 76) This third document was dated September 8, 2000. (*Id.*) The final document is another notice from the United States Bankruptcy Court for the District of Delaware. (*Id.* at 123)

**6.** Prudential was one of the defendants named in plaintiff's original complaint.

dance with the duly authorized instructions from the Participant or Participants ... having an interest in the transactions shall ... deliver dividends, distributions, rights, securities, proxy material and other property or documents received by [DTC] with respect to a Participant's Deposited Securities ..., except as provided below in this Rule or in the Procedures ...." (*Id.* at 40)

20. One of DTC's procedures states: "From time to time, DTC receives notices and other documents ... concerning securities that are or were credited to Participant's DTC accounts. Although DTC may make certain of such documents and communications ... available to Participants, it shall be under no obligation to do so." (*Id.* at 58)

21. DTC also had an internal operating procedure which dealt specifically with Legal Notices. (*Id.* at 64) This procedure directs DTC employees to "[s]end the following to the Legal department: ... Items where Cede & Co. or DTC is listed as a defendant ...." (*Id.* at 64)

22. Section 2.14 of State Street Bank's Custodian Agreement with MetLife and State Street Income & Trust pertains to "Communications Relating to Fund Portfolio Securities." (D.I. 281 at 151) According to this section:

> The Custodian shall transmit promptly to the fund all written information (including, without limitation, pendency calls and maturities of domestic securities and expirations of rights in connection therewith and notices of exercise of call and put options written by the fund and the maturity of future contracts purchased or sold by the Fund) received by the Custodian from issues of the domestic securities being held for the Fund.

(*Id.* at 151)

23. As a matter of practice, if State Street Bank received information regarding securities owned by its clients (e.g., securities owned by the SSR Defendants), it would forward that information onto the client. (*Id.* at 147, 154, 160–62)

## III. CONCLUSIONS OF LAW

1. A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the

nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

2. If the statute of limitations has not run on a claim as of the bankruptcy petition date, 11 U.S.C. § 108(a) extends the time period for filing the claim by "two years after the order for relief." *In re Fruehauf Trailer Corp.,* 250 B.R. 168, 185 (D.Del.2000). For purposes of 11 U.S.C. § 108(a), filing a voluntary petition for bankruptcy operates as an order for relief. *Id.* (citing 11 U.S.C. § 301). Since Color Tile filed voluntary petitions for bankruptcy in January of 1996, plaintiff's claims against defendants were barred by the statute of limitations in January of 1998. Consequently, plaintiff's second amended complaint, which was filed on March 19, 2001, is time-barred absent relief under Fed.R.Civ.P. 15(c)(3).

3. Federal Rules of Civil Procedure 15(c)(3) governs when an amendment to a complaint changing a party will relate back to the original complaint. Under Rule 15(c)(3) such an amendment relates back to the original complaint if: (1) the claim or defense asserted in the amended pleading arose from the conduct, transaction, or occurrence of the original pleading; (2) the party to be brought in by amendment received notice, within 120 days of filing of the complaint, in such a manner that they will not be prejudiced in maintaining a defense; and (3) the party to be brought in by amendment knew or should have known, within 120 days of filing of the complaint, that the action would have been brought against it but for a mistake concerning the identity of the proper party.

4. Notice under Fed.R.Civ.P. 15(c)(3) "may be actual, constructive, or imputed." *Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186, 195 (3d Cir.2001). The Third Circuit has recognized two methods of imputing notice: (1) the "shared attorney" method; and (2) the "identity of interest" method. *Garvin v. City of Philadelphia,* 354 F.3d 215, 222–23 (3d Cir.2003). The shared attorney method is based on the notion that when the originally named party and the parties sought to be added are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.* Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other. *Id.* at 223. Courts have found an identity of interest between a parent-corporation and its wholly owned subsidiary; between two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space; and between past and present forms of the same enterprise. *Young v. Lepone,* 305 F.3d 1, 14 (1st Cir.2002); *see also E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.,* 621 F.Supp. 310, 314 (D.Del. 1985) (finding identity of interest where the new defendant was a subsidiary of original corporate defendant); *Sorrels v. Sears, Roebuck & Co.,* 84 F.R.D. 663, 667 (D.Del.1979) (finding identity of interest where defendants were past and present forms of same enterprise); *cf. In re Convertible Rowing Exerciser Patent Litig.,* 817 F.Supp. 434, 442 (D.Del.1993) (finding no identity of interest where an unincorporated subsidiary that was autonomous and had different management as the original named defendant).

5. Neither State Street Bank nor defendants received actual notice of the original complaint. Plaintiff served its original

complaint on DTC. Susan Geigel, Director of Legal and Regulatory Compliance at DTC, testified that her understanding was that DTC did not forward the complaint onto State Street Bank or defendants. Geigel based this understanding, at least in part, on a query of LENS which failed to produce the original complaint.[7] Geigel's understanding is corroborated by the depositions of Brian F. O'Leary and Timothy J. Panaro. O'Leary, operations manager in charge of voluntary and involuntary corporate actions at State Street Bank, stated that he never saw plaintiff's original complaint until his deposition by plaintiff in 2004. Panaro, Vice President and unit head in Investor Services at State Street Bank, stated that in a search of files dating back to 1998 none of his employees could find any communication or notification relating to Color Tile.[8]

 6. Furthermore, defendants did not receive constructive or imputed notice of the original complaint. There is no evidence to suggest that DTC, Cede, and defendants have ever shared counsel.

Consequently, the "shared attorney" method is inapplicable to the present matter. The evidence also does not establish that there was an identity of interest between the DTC/Cede and defendants. DTC/Cede and defendants are autonomous corporations,[9] and they do not have substantially identical officers, directors, or shareholders. As a result, the relationship between DTC/Cede and defendants is not sufficiently similar to qualify as an identity of interest. Plaintiff's own actions in this case suggest that DTC/Cede and defendants do not have identical interests since plaintiff dismissed DTC/Cede from the complaint but continued to pursue claims against defendants. Surely entities that have been dismissed from a litigation do not have identical interests to those that remain parties. Consequently, the court views DTC/Cede and defendants as not having identical interests.

██ 7. Plaintiff argues that the flow of dividends and notices concerning dividends indicates an identity of interest between DTC/Cede, State Street Bank, and defen-

---

**7.** As noted above, a "Procedures" document for LENS from 1991 stated that "[a]ll notice information is retained on the system for one year." (D.I. 281 at 76) However, defendants offered evidence of documents retained on LENS for at least two years. (*Id.* at 99) Given that the "Procedures" document is from 1991, and defendant recently found documents on LENS that were more than two years old, the court finds that LENS is capable of retaining documents longer than one year.

**8.** Prudential Insurance Company's requests for information regarding the income paid to Prudential by Cede also did not serve to create actual notice of the suit. Plaintiff produced an email between State Street Bank employees which stated that Prudential needed this information because "[t]hey are being sued by this bankrupt company." (281 at 173) This evidence is insufficient to establish that State Street Bank had actual notice of plaintiff's original complaint. Nothing in the email between the State Street Bank employ-

ees establishes that it was plaintiff who sued Prudential. At the very least State Street Bank would have had to do additional research to determine whether defendants could potentially be named in the complaint. The fact that two separate State Street Bank employees, at least initially, testified that they did not recall any mention of litigation surrounding these requests for information suggests that State Street Bank did not perform this additional research.

**9.** Plaintiff alleged in its motion for summary judgment that defendants were part owners of DTC and Cede. (D.I. 288 at 9) However, defendants' supplemental memorandum to correct post-trial briefing states that defendants never owned any part of DTC or Cede. (D.I. 291) If defendants were part owners of DTC and Cede, then there would have been no reason to include State Street Bank in defendants' acquisition of the Color Tile stock. Thus, the court finds that defendants were not part owners of DTC or Cede.

dants.[10] It remains unclear to the court how DTC/Cede's act of passing along dividends and notices about those dividends to State Street Bank and, ultimately, to defendants aligns the interests of DTC/Cede, State Street Bank, and defendants. However, there is a difference between conveying the dividends and notices of Color Tile, with which DTC/Cede had a contractual agreement, and conveying complaints filed by third parties, with whom DTC/Cede had no agreement. As a result, the flow of dividends and notices does not create an identity of interest between DTC/Cede, State Street Bank, and defendants for all purposes.

8. Plaintiff argues that DTC and Cede were agents of defendants and, therefore, notice to DTC/Cede could be imputed to defendants. Although plaintiff relies on the general proposition that service of a complaint on an agent provides notice to the principal (D.I. 288 at 9), plaintiff has not carried its burden of proving that DTC/Cede was an agent of defendants in this regard.[11] Consistent with DTC's rules and procedures (D.I. 281), DTC had no legal obligation to forward complaints it received regarding Participants' securities.[12]

## IV. CONCLUSION

For the reasons set forth above, the court finds that defendants did not receive notice of the instant cause of action within the applicable statute of limitations. Consequently, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. An order shall issue.

---

10. In *Enstar Corp. v. Senouf,* the court held that beneficial owners of Enstar may not seek appraisal rights by themselves without Cede taking action on their behalf as the stockholder of record. 535 A.2d 1351 (Del.1987). Plaintiff cites this holding as evidence that DTC, State Street Bank, and defendants had an identity of interest. Despite the fact that DTC had to exercise certain rights for its beneficial owners, DTC, State Street Bank, and defendants remained autonomous corporations and, therefore, did not have an identity of interest.

11. The court recognizes that in prior rulings it denied motions to dismiss on this ground. In that procedural posture, however, the court had an incomplete record and was required to view the facts in a light most favor-

able to plaintiff. Instantly, the parties have created a more complete factual record and it is plaintiff's burden to prove by a preponderance of evidence, that the second amended complaint including defendants relates back to the date of the original complaint, filed within the applicable statute of limitations.

12. State Street Bank, however, was obligated to forward complaints it received regarding its clients' securities. Section 2.14 of State Street Bank's Custodian Agreement states that it "shall transmit" all written information it received pertaining to the securities it held for its clients. Because the court has already concluded that State Street Bank did not receive notice of the original complaint, its obligation to forward the original complaint is irrelevant.